WILLIAM F. NORTON, JR., Appellant, v. THIEBES STIERLING MUSIC COMPANY, Garnishee of GUSTAV HEINRICHS, Respondent.

St. Louis Court of Appeals, December 12, 1899.

1. **Attachment, Fraudulent:** GARNISHMENT: TRIAL OF ISSUES MADE THEREBY. Respondent company advanced money to defendant Heinrichs and guaranteed other outlays for which defendant would be liable to enable him to fulfill his engagement at Music Hall, St. Louis. Respondent took promissory notes for the money advanced and instituted friendly attachment suits to collect same, the constable executed the writs so as not to disturb the property, the sale of tickets or the operatic performance of defendant's company. Appellant afterward instituted garnishment proceeding on attachment whereby the sheriff took possession of ticket receipts for the last evening of the performance and seized certain trunks, costumes, music and musical instruments as the property of defendant: Held, that as the purpose of the attachments by respondent was to hold off Heinrichs' other creditors until his engagement at Music Hall had been filled, and the proceeds thereof absorbed by respondent, they were, however honest in fact, fraudulent in law to whatever extent they hindered and delayed his other creditors.

2. ———: ———: PREFERENCE OF CREDITORS. Although the attachment suits may have had the effect of shielding the property of Heinrichs from his other creditors, yet upon the principle that a debtor may prefer one creditor over another, such suits unless they did hinder and delay other creditors from collecting their debts, were not fraudulent.

3. ———: ———: VOID LEVIES. The levies of the writs of attachment by the constable. without his taking possession of the property and of the future receipts arising from the tickets, constituted no levy and was a nullity, as property levied upon must be capable of seizure, and be seized.

Appeal from the St. Louis City Circuit Court.—*Hon. Seldon P. Spencer*, Judge.

REVERSED AND REMANDED.

*Lubke & Muench* for appellant.

(1) The entire arrangement between the garnishee and the attachment creditor, by which the property was temporarily withdrawn from the reach of other creditors, and left in possession of the debtor for his use, was fraudulent in law, and can not stand. R. S. 1889, sec. 5170; Shelley v. Boothe, 73 Mo. 77; Bigelow v. Stringer, 40 Mo. 195. (2) The alleged levy in this case was no actual levy. The only property ostensibly levied on was such as was completely left in the possession of the attachment defendant, to be used by him while he was in the city, the covinous levy being released as soon as defendant had finished his engagement here. Such a levy has been variously held to be either presumptively void or absolutely void. It has never been upheld. Freeman on Executions, secs. 260, 261; Crocker on Sheriffs, sec. 435; Bond v. Willett, 1 Keyes (N. Y. App.), 386; Bump on Fraud. Convey., sec. 522; Burrows v. Stoddard, 3 Conn. 160; Reed v. Ennis, 4 Abb. Pr. 393; Chancellor v. Phillips, 4 Dall. 213; Tainter v. Williams, 7 Conn. 271, 273; Davidson v. Waldron, 31 Ill. 120. (3) To secure any legal right to the property

of the defendant, as against other creditors, the officer must make an actual levy or seizure. To levy means to actually seize and hold such personal property of the debtor as can be sold by order of court. He could not levy on the future possible proceeds of property not even levied on. The "levy can not rest in mere undivulged intention to seize the property." R. S. 1889, sec. 539; Douglass v. Orr, 58 Mo. 575; Shaullein v. Francis, 67 Mo. App. 462. (4) A garnishee who has received the money or goods of the debtor into his hands, pursuant to a fraudulent scheme between the two, is liable to other creditors on writ of garnishment. Lee v. Tabor, 8 Mo. 322; Potter v. Stevens, 40 Mo. 591; Strauss v. Ayers, 34 Mo. App. 248; Doggett v. Fire Ins. Co., 19 Mo. 201; Joseph v. Boldridge, 43 Mo. App. 333.

*Joseph Wheless* and *Lee W. Grant* for garnishee.

"The right to dispose of one's own property for an honest purpose is not terminated by indebtedness or insolvency; although such a disposition may, or does, have the effect of hindering or delaying other creditors." Dougherty v. Cooper, 77 Mo. 528. "An insolvent debtor, or one in failing circumstances, has a right, with an honest view to pay his debts, to convey his property to one or more of his creditors in payment of their debts, and such creditors have the right to take an assignment of the property to secure their claims." Ames v. Gilmore, 59 Mo. 537; Schroeder v. Bobbitt, 108 Mo. 289; Nelson Dist. Co. v. Creath, 45 Mo. App. 169; Larrabee v. Franklin Bank, 114 Mo. 592. "Such a debtor may transfer all his property to one creditor, and leave the others wholly unpaid." Cason v. Murray, 15 Mo. 378; State ex rel. v. Distilling Co., 20 Mo. App. 21. And this actual levy and continuous possession existed on Saturday evening when the sheriff's attempted levy was made. His seizure of the money in the hands of the deputy constable, who was in possession, was a high-handed wrong.

BLAND, P. J.—William F. Norton, Jr., brought suit in the circuit court, city of St. Louis, against Gustav Heinrichs, by attachment; the Thiebes-Stierlin Music Company was garnished and appeared in said court, and to interrogatories denied any indebtedness to the defendant Heinrichs; Norton replied, alleging in substance, that the garnishee knowing that Heinrichs was indebted to Norton and others, entered into a conspiracy and arrangement with Heinrichs, whereby the Thiebes-Stierlin Music Company should institute certain attachment suits against Heinrichs before a justice of the peace within the city of St. Louis, upon which writs should be issued and delivered to a constable, and that ostensible levies should be made on all the assets of Heinrichs to be found in said city, and that these ostensible levies should be maintained on the receipts of the sales of tickets that were and should be made to certain operatic performances, given and to be given by Heinrichs Operatic Company at the Grand Music Hall in the said city of St. Louis during a week beginning about March 9, 1896; that to carry out this fraudulent scheme Heinrichs gave to the garnishee his four promissory notes of $500 each, due on demand, which notes were immendiately filed before a justice for suit and writs of attachment procured and delivered to a deputy constable, who under the direction of the garnishee made ostensible levies on all the property of Heinrichs found in St. Louis and on all the moneys then received and which should be thereafter received for the sale of tickets to the several operatic performances, given and to be given by the Heinrichs Operatic Company; that no actual levy was made on anything, and that the constable took nothing into his possession on which he pretended to levy the several writs of attachment, but that all the money received on account of the sale of tickets went into the possession of the garnishee, etc., and from this source it (the garnishee) received $2,500, of the moneys of Heinrichs, and that the other property of Heinrichs, on which

the constable ostensibly levied was turned back to Heinrichs or other claimants.

The answer of the garnishee was a general denial. The issues were tried by a jury, who found a verdict for the defendant. After an unavailing motion for new trial plaintiff appealed.

From the evidence adduced on the trial we gather the following facts: Heinrichs, a resident of the city of New York, in 1896 organized an opera company of about one hundred musicians, and started out to give performances in several cities, including the cities of Cincinnati, Ohio, and St. Louis, Mo.; his advance agent, Alfred Hoegerle, came to the city of St. Louis, to arrange for a series of entertainments to be given here; to perfect his arrangements he interested the Thiebes-Stierlin Music Company, a corporation conducting a music store on Olive street, St. Louis, and induced this company to make advance sales of tickets, to guarantee hall rent, printing bills, etc. After the guarantees had been given and after a considerable number of advance sale of tickets had been made and the performances to begin March 9, 1896 had been largely advertised, Hoegerle went to Fred C. Stierlin, secretary of the Thiebes-Stierlin Music Company, and represented to him that Heinrichs with his company was stranded in the city of Cincinnati, and unless financial assistance was given him, he would not be able to come to St. Louis to fill his engagements. Stierlin in company with Hoegerle, immediately went to Cincinnati and found the situation as represented, and that it was necessary to pay out considerable sums of money and guarantee the payment of other sums to enable Heinrichs and his company to get out of Cincinnati and to reach St. Louis in time to meet their engagements there. To get the opera company out of Cincinnati, Stierlin, for his company, advanced $1,465 to Heinrichs, and guaranteed his and the railroad fare of his company from Cincinnati to St. Louis, and took from Heinrichs and his manager Hoegerle the following

contract, to secure what had been paid to, and what the garnishee had agreed to pay for Heinrichs, to wit:

"Cincinnati, March 7, 1896.

"Received of Thiebes-Stierlin Music Company fourteen hundred and sixty-five dollars. Advanced to Heinrichs Grand Opera Company. Said amount to be deducted from first receipts from performances to be given at St. Louis Exposition Music Hall during week of March 9, 1896.

"The Heinrichs Grand Opera Company guarantee the Thiebes-Stierlin Music Company against all losses, and should the amount of the St. Louis engagement be insufficient to cover the above and any other advances made, the indebtedness not repaid is to be considered a first lien on the receipts of any future engagements at any city in any state until the whole amount shall have been paid.

"The Heinrichs Grand Opera Company further guarantee to give seven performances at the Music Hall in St. Louis, and to give the Thiebes-Stierlin Music Company the preference over and above all creditors on the receipts of such performances until they shall have been paid.

"Done in Cincinnati, Ohio, this 7th day of March.

"Gustav Heinrichs,
"Alfred Hoegerle,
"Business Manager."

At the same time Heinrichs and his manager agreed that the Thiebes-Stierlin Music Company should handle the sale of all tickets and apply the gross proceeds to the payment of advances already made and all other advances to be thereafter made to enable Heinrichs to give the opera performances he had agreed to give. Under this arrangement the Thiebes-Stierlin Music Company handled the sale of all tickets to the performances given at the Grand Music Hall and all the moneys that were received on sales of such tickets, which amounted to $3,450. The amount paid out by the Thiebes-Stierlin Music Company to bring Heinrichs & Company to

St. Louis, for rent of hall, advertising, and other expenses incurred on account of the performances, was $5,774.77. Out of the proceeds of the sale of tickets the Thiebes-Stierlin Music Company paid a debt due from Heinrichs to a party in the East, and advanced some money to Heinrichs during the performances to pay personal expenses of Heinrichs & Company, leaving a balance in its hands to the credit of Heinrichs of $2,479.88, and a balance due from Heinrichs to the garnishee of $3,294.89. The performances began on a Monday; on the following Wednesday or Thursday Mr. Delano, a lawyer, presented a bill of $187 due from Heinrichs to an eastern party, to the Thiebes-Stierlin Music Company for payment, and threatened to attach Heinrichs and stop the performances if the bill was not paid. The music company paid this debt from moneys received on sale of tickets, rather than have the performances interrupted by an attachment, and then employed Delano as its attorney, who the secretary of the company (Mr. Stierlin) says he understood had made the law of theatricals a specialty, to take care of its claims against Heinrichs, and that after showing Delano the contract with Heinrichs, Delano advised that the promissory notes of Heinrichs should be taken and attachment suits be brought and the proceeds be secured in this way to prevent other creditors from attaching them; that acting on this advice four promissory notes of $500 each were presented to Heinrichs for his signature; these he signed, whereupon attachment suits were immediately instituted before a justice, writs of attachment were issued and delivered to a deputy constable, who proceeded to execute them in such a manner as not to disturb the property, the sale of tickets or the operatic performances. The deputy constable went to the Grand Music Hall with his writs, where he saw a lot of trunks and musical instruments, which he says he levied on, and put a watchman over. He took possession of none of these, did not make an examination to find what the trunks contained, touched nothing, made no

disturbance, but left a man to watch.   He went to where the
employees of the Thiebes-Stierlin Music Company were selling
tickets for the performance—the box office at the Music Hall,
swore in one of them as deputy constable, and directed him
to keep an account of all moneys received on account of the
sale of tickets, to keep it and to give him receipts for the
amounts taken in at each performance.   The so constituted
deputy continued to sell tickets, to count up the cash taken in
at each performance, turned it in to his employer, and gave
the constable receipts therefor in his own name.   This con-
tinued until the last performance, when the sheriff got pos-
session of the box receipts by virtue of the writ issued in the
suit of Norton v. Heinrichs.   It is quite apparent that the
constable levied upon nothing; his pretended seizure was no
seizure, and it is also apparent from the evidence on the part
of the garnishee that it was intended by the Thiebes-Stierlin
Music Company (the plaintiff in these attachment suits) that
no actual seizures should be made; it is equally patent that
the object of the attachments was to hold off the other creditors
of Heinrichs until his engagements at the Grand Music Hall
should be all filled and the proceeds thereof should be taken
in by the Thiebes-Stierlin Music Company.   However honest
the purpose of the Thiebes-Stierlin Music Company may have
been in this proceeding, its effect was to hinder and delay the
other creditors of Heinrichs, and was in law fraudulent, pro-
vided any of Heinrichs property which was liable to execution
or attachment was tied up by the attachments and placed or
intended to be placed beyond the reach of his creditors.   Under
the contract made by Heinrichs and his manager with the
Thiebes-Stierlin Music Company in Cincinnati the gross
receipts of the sales of tickets was the money of the garnishee;
all the tickets that were sold for the performances at the Grand
Music Hall were sold by the garnishee, so that the moneys
received therefor was not only its moneys, but were received
and kept by it.   It seems from the evidence of Heinrichs

that the constable levying the attachment writs took a bunch of music of the Opera Il Trovatore, the property of Heinrichs (value not stated), but that all other personal property, on which the constable attempted to levy, was either borrowed property or property of members of the opera company other than Heinrichs, none of which ever came into the possession of the constable. So that if we are to believe the evidence oral and written of the officers of the Thiebes-Stierlin Music Company and of Heinrichs and his manager, there was at no time any moneys or properties in the hands of the garnishee belonging to Heinrichs, unless it was the bunch of music, or that it owed Heinrichs anything. But the cause was tried upon an entirely different theory, to wit, upon the theory that the attachments brought by the garnishee against Heinrichs, were for the purpose of hindering and delaying the creditors of Heinrichs. That they were brought for that purpose, is practically admitted by the officers of the garnishee company. On this question of fact the evidence is all one way. The jury under instructions given by the court found that the attachments were *bona fide* prosecuted; there was perhaps no intentional fraud; there was however fraud in law, but the fraud did not hinder or delay any creditor of Heinrichs, for the reason that no property of his was attached, except the bundle of music. The appellant was not injured because the Thiebes-Stierlin Music Company attached, or attempted to attach its own moneys. It may be that the appellant is entitled to recover the value of the bunch of music; he is unquestionably entitled to recover the costs of this appeal, wherefore the judgment is reversed and the cause remanded. All concur.